IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ISMAEL GOMEZ, JR., <br><br> Plaintiff, <br><br> vs. <br><br> UNITED STATES OF AMERICA, J.S. WALTON, M. WINKLMEIER, M. BAGWELL, LESLEY DUNCAN BROOKS, CASTILLO, DR. KING and DR. HARVEY, <br><br> Defendants. | Case No. 13-cv-946-JPG-SCW |

**MEMORANDUM AND ORDER**

INTRODUCTION

Pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), *pro se* plaintiff Ismael Gomez, currently incarcerated at the U.S. Penitentiary in Marion, Illinois ("USP-Marion"), filed his complaint against several individuals for several claims related to improper treatment of his nerve pain. The only claims which currently remain in this case are Count 2 alleging the defendants were deliberately indifferent to his serious medical needs, Count 3 alleging the defendants retaliated against Gomez for his litigation activities by failing to properly treat his medical needs, and Count 5 alleging that the defendants discriminated against him based on race by failing to properly treat his medical needs (Doc. 24).

This matter is currently before the Court on the defendants' motion for summary judgment on the basis of failure to exhaust administrative remedies (Doc. 71). Gomez has filed a response in opposition to the motion (Doc. 78). Based on the following, the Court will grant in part and deny in part the defendants' motion.

**FACTUAL BACKGROUND**

Gomez filed his first amended complaint alleging that the defendants denied him adequate medical care and retaliated against him for his litigation activities (Doc. 22). As narrowed by the Court's threshold order, Gomez alleges that he suffers from arthritis and a pinched nerve which affects his neck, shoulder, and arms, as well as suffering from a herniated disc and neuropathy (Doc. 24). Gomez alleges that he puts in sick-call slips but they are ignored and when he is seen by the doctor, he is only given a superficial examination. Gomez alleges that he has not received adequate treatment for his conditions.

In addition to his deliberate indifference claim, Gomez alleges that this failure to properly treat his ailments is due in part to retaliation for Gomez's being a witness in *Bakhtiari v. Walton*, Case No. 13-cv-906-JPG (S.D. Ill. Feb. 10, 2014), as well as for filing his present lawsuit. Gomez also alleges that the defendants refuse to provide him adequate medical care because he is Latino and argues that non-Latinos in his same position have received adequate care. While Gomez's first amended complaint also alleged claims of conspiracy (Counts 6, 7, and 8), those claims were recently dismissed as were all claims against Dr. Harvey and M. Bagwell (Doc. 82). Thus, the only claims which remain are the deliberate indifference claim (Count 2), the retaliation claim (Count 3), and the equal protection claim (Count 5).

In response to Gomez's complaint, the remaining defendants, including J.S. Walton, M. Winklmeier, Lesley Duncan Brooks, Castillo, and Dr. King have filed a motion for partial summary judgment (Doc. 71). The defendants argue that they are entitled to summary judgment on Gomez's retaliation and equal protection claims because Gomez has failed to exhaust his administrative remedies as to those two claims. Gomez has filed a response (Doc. 78) to the motion, but he does not dispute the facts of the case, only arguing that his claims are meritorious.

Thus, the Court adopts the facts of the case as submitted by the defendants.

As it relates to administrative exhaustion of Gomez's claims, Gomez filed one grievance that was fully exhausted. Remedy No. 746362 was filed as an informal complaint on July 30, 2013 (Doc. 71-1, p. 29). Gomez indicated that since being transferred to Marion his chronic care medications had been denied or cancelled. Gomez also sought a referral to an outside physician. His request was denied as not medically indicated. Gomez then submitted a BP-9, dated August 6, 2013, which was denied on August 26, 2013 (Doc. 71-1, pp. 30-31). The denial indicated that he had been seen by the doctor and his gabapentin, the drug he was taking prior to his transfer, was discontinued. Gomez then filed a BP-10 appeal to the regional office (Doc. 71-1, p. 32). This appeal was denied, finding that Gomez had been provided adequate medical care (Doc. 71-1, p. 33). Gomez subsequently submitted a BP-11 to the General Counsel level and that remedy was closed on October 14, 2014, noting that Gomez had adequate medical treatment (Doc. 71-1, pp. 34-35).

The defendants have pointed to two other remedies in his file. Remedy number 755169 was filed at the regional level on a BP-10 form seeking compassionate release (*see* Doc. 71-1, p. 26). That remedy was rejected because he started at the wrong level. Gomez filed another Remedy No. 781225 on May 30, 2014, with a BP-9 form seeking his prescription medication and an examination (*see* Doc. 71-1, p. 27). However, that grievance was denied and Gomez did not appeal the grievance to the BP-10 or BP-11 level.

## LEGAL STANDARDS

Summary Judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [the defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010).

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Gomez cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id*. Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Under *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Id.* at 740-41. Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as

4

where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over.  (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id*. at 742.

### A. Bureau of Prisons Exhaustion Requirements

The detailed administrative remedy procedure for Federal Bureau of Prisons ("BOP") inmates is set forth in 28 C.F.R. §§ 542.10-18.  *See Kaba v. Stepp*, 458 F.3d 678, 681-81 (7th Cir. 2006).  An inmate must first attempt to resolve his complaint informally.  28 C.F.R. § 542.13.  At USP-Marion, the informal complaint is lodged on a "BP-8" form.  Should the informal complaint fail, the inmate has 20 days from the complained-of event to file a formal Administrative Remedy Request to the warden on a "BP-9" form.  28 C.F.R. § 542.14(a).  If not satisfied with the warden's response, the inmate may file (on a "BP-10" form) a written appeal to the BOP's regional director "within 20 calendar days of the date the Warden signed" the BP-9 response.  28 C.F.R. § 542.15(a).  Finally, if still unsatisfied, the inmate may, within 30 days of the regional director's response, file (on a "BP-11") an appeal to the BOP's general counsel.  28 C.F.R. § 541.15(a).  "Appeal to the General Counsel is the final administrative appeal."  28 C.F.R. § 541.15(a).  An inmate's remedy form must focus on a single issue or a reasonable number of closely related issues.  28 C.F.R. § 542.14(c)(2); *see also* Federal Bureau of Prisons, U.S. Department of Justice, Program Statement 1330.17, at 5 (Aug. 20, 2012), http://www.bop.gov/policy/progstat/1330_017.pdf (superseded by Federal Bureau of Prisons,

U.S. Department of Justice, Program Statement 1330.18 (effective January 4, 2014)). "If the inmate includes on a single form multiple unrelated issues, the submission shall be rejected and returned without response." *Id.*

## ANALYSIS

### A. Retaliation Claim

The defendants argue that they are entitled to summary judgment on Gomez's retaliation claim because he did not properly exhaust his administrative remedies as to that claim. Gomez filed three remedies while at Marion, Remedy No. 746362, Remedy No. 755169, and Remedy No. 781225 (Doc. 71-1). The defendants have shown, and Gomez has not denied, that Gomez did not fully exhaust Remedy Nos. 755169 and 781225. While the defendants admit that Remedy No. 746362 was fully exhausted, they argue that the remedy cannot support Gomez's retaliation claim because his allegations regarding retaliation took place after he filed his grievance.

Gomez's Remedy No. 746362 was first filed on July 30, 2013, and complained that he was denied proper medical care and medication. However, Gomez's retaliation claims allege that the defendants denied him medical care for filing an affidavit in the *Bakhtiari* case. The affidavit Gomez filed, and the alleged motivating factor for the retaliation, was signed January 3, 2014 (Doc. 71-2). Thus, the basis of his retaliation claim occurred long after Gomez filed his grievance regarding improper medical care. As such, his July 30, 2013, grievance could not possibly have served to exhaust his retaliation claim as the retaliatory motive did not occur until some five months after Gomez filed his grievance. Nor can his July 30, 2013, remedy serve to exhaust his retaliation claim alleging that the defendants were retaliating due to the filing of his current suit, as alleged in his complaint, as his suit was filed in August 2013, after he had filed his remedy. He could not have grieved matters that had not yet occurred. If Gomez felt he was continuing to be

denied proper medical care and medication in retaliation for signing his affidavit or for filing this suit, he would have had to have filed a remedy stating such in order to adequately exhaust his claims. As he did not, the Court finds that Gomez has failed to exhaust his administrative remedies and will grant summary judgment to the remaining defendants on the retaliation claim.

### B. Equal Protection Claim

The defendants also argue that Gomez's grievance failed to exhaust his administrative remedies as to his equal protection claim. The defendants argue that while the grievance alleges that he is being denied medical care and his medication has been discontinued, it does not give the BOP notice that Gomez believes the denial of his medication was due, in part, to his race.

It is the prison's grievance procedure requirements that define whether a grievance has properly exhausted a claim. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). When the administrative rules are silent as to what a grievance must contain, grievances need only provide the prison with a chance to rectify any potential issues that may have existed. *Cannon v. Washington,* 418 F.3d 714, 719 (7th Cir. 2005) (Purpose of grievance process is to "alert prison officials to perceived problems and to enable them to take corrective action without first incurring the hassle and expense of litigation."). This satisfies the purpose of the grievance process, which is to alert officials of a problem so that action can be taken to remedy the problem. *See Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (function of grievance is to alert officials so that they may provide corrective action); *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)(purpose of exhaustion is to allow officials an opportunity to address complaints internally). The grievance is not meant to provide notice to individuals of a future lawsuit. *Glick v. Walker*, 385 Fed. App'x 579, 583 (7th Cir. 2010) (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)). Nor does a grievance need to set forth legal theories when the administrative requirements do not require such theories. *See*

7

*Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002).

Here, Gomez's remedy provided the BOP with notice of the problem he was having at Marion, specifically, that he was not being provided with proper medical care and that he was improperly denied his medication for his chronic conditions.  The fact that he believes that this was done due to his race is merely the legal theory that he is now offering in his suit.  Nothing in the BOP regulations requires that a remedy explain legal theories for a prisoner's problem, nor do the remedy forms indicate that a prisoner must submit all potential legal theories for consideration by the prison.  Further, the defendants have failed to point to such requirements in the BOP regulations.  Instead, the remedy forms merely require that an inmate state a specific complaint (on the BP-8 form) and an inmate's request (on the BP-9 form).  Nothing requires that the plaintiff articulate a legal theory in order to exhaust.  See *Lindh v. Warden, Federal Correctional Inst., Terre Haute, Ind.*, Case No. 14-cv-142-JMS-WGH, 2015 WL 5009244, at * 3 (S.D. Ind. Aug. 20, 2015) (Magnus-Stinson, D.J.) (citing *Strong*, 297 F.3d at 650).  As Gomez was not required by regulation or prison directive to explain his legal theory, the Court finds that Gomez only needed to provide an explanation of his complaint – that he was denied medical care and medication – sufficient to put the prison on notice of that complaint.  That gave the prison ample notice of his issues in order to remedy them.  As such, the Court finds that Gomez has adequately exhausted his equal protection claim and will deny the defendants' motion for summary judgment as to that claim.

## CONCLUSION

Accordingly, the Court **GRANTS in part and DENIES in part** the defendants' motion for summary judgment (Doc. 71).  The Court **GRANTS** summary judgment as to Gomez's retaliation claim (Count 3) and **DENIES** summary judgment as to Gomez's equal protection claim

(Count 5). Gomez's retaliation claim is **DISMISSED without prejudice**. The only claims which remain in this case are the deliberate indifference claim (Count 2) and the equal protection claim (Count 5). The Court further notes that the only claim against the defendant United States in this case (Count 1) was dismissed without prejudice in the Court's January 27, 2015, order (Doc. 24). Accordingly, the Court **DIRECTS** the Clerk of Court to terminate the United States as a party to this suit.

**IT IS SO ORDERED**.
**DATED: June 24, 2016**

                                              s/ J. Phil Gilbert
                                              **J. PHIL GILBERT**
                                              **DISTRICT JUDGE**